## THE JOHN A. BERKMAN.

*(District Court, D. Massachusetts.   January, 1881.)*

1. DOCK—LIABILITY OF OWNER OR OCCUPANT.

"The owner or occupant of a dock is liable in damages to a person who, by his invitation, express or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care   Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready.   If he fails to use such due care—if there is a defect which is known to him, or which, by the use of ordinary care and diligence, should be known to him—he is guilty of negligence, and liable to the person who, using due care, is injured thereby."

*Nickerson* v. *Tirrell*, 127 Mass. 236.

2. SAME—LIABILITY OF VESSEL.

*Held*, under the circumstances of this case, that the master of a vessel was at fault in attempting to enter a dock after the tide had fallen, when he knew that he was about to enter a dock where his vessel could not float at all conditions of the tide.

3. SAME—LIABILITY OF OWNER.

*Held, further*, under the circumstances, that the owner of the dock was also in fault in not cautioning the vessel to stop before she reached the point where she was injured by grounding.—[ED.

*J. C. Dodge & Sons*, for libellants.

*H. N. Shepard*, for respondents.

NELSON, D. J.   This is a cause of damage.   The libellants are the owners of the schooner John A. Berkman, and the

respondents are the proprietors of a coal wharf in East Boston. On the twenty-eighth of November, 1878, the schooner arrived at this port, having on board a cargo of coal consigned to the respondents. On the following day she entered the dock, but before reaching her discharging berth at the wharf she grounded. At the next tide, in the night-time, a further attempt was made to haul her to her berth, but failed. The next day, at high water, the attempt was renewed, and this time with success. She was then placed in her discharging berth and her cargo discharged. During these proceedings the schooner sustained injury from being strained and hogged, and the question in the case is whether the respondents, as owners of the dock, are responsible for the damage, and to what extent.

It was the expectation of the parties that the schooner was to enter the dock at high water, and was to take the ground as the tide receded. It is usual for coal vessels to take the ground at low water when discharging at the coal wharves in Boston.

The rule of law applicable to this case is well settled, and is not in dispute. The last case upon the subject is *Nickerson* v. *Tirrell*, 127 Mass. 236, and the rule is thus stated by *Morton*, J.: "The owner or occupant of a dock is liable in damages to a person who, by his invitation, express or implied, makes use of it, for an injury caused by any defect or unsafe condition of the dock which the occupant negligently causes or permits to exist, if such person was himself in the exercise of due care. Such occupant is not an insurer of the safety of his dock, but he is required to use reasonable care to keep his dock in such a state as to be reasonably safe for use by vessels which he invites to enter it, or for which he holds it out as fit and ready. If he fails to use such due care —if there is a defect which is known to him, or which, by the use of ordinary care or diligence, should be known to him—he is guilty of negligence, and liable to the person who, using due care, is injured thereby." I adopt this as a full and accurate statement of the law of this case.

Upon a careful review of all the evidence in the case I

have come to the following conclusions upon the questions of fact in dispute:

1. That there was a sufficient depth of water in the dock to allow the schooner, with her depth of 13 feet, to enter and float with entire safety at high water.

2. That the dock was sufficiently dredged, and that there was no such unevenness or inequality in the surface of the hard bottom of the dock, and no such accumulations of mud, as to make it unsafe for this vessel to lie on the bottom at low water.

3. That the evidence is not sufficient to satisfy me that a log or stick of timber was imbedded in the dock, which would have caused the injury to the schooner.

4. The bill of lading, signed by the master, and accepted by the respondents' agent in Philadelphia, contained the memorandum, "Plenty water." This was relied upon at the hearing, though it is not charged in the libel. But conceding this to be open to the libellants, and that it is in effect a warranty of the sufficiency of the depth of water in the dock for the schooner, I yet find, in view of the understanding of the parties, when the bill of lading was signed, and the usage of coal vessels arriving in Boston to take the ground at low water when lying at coal wharves, that there was no breach of the warranty.

Upon all the foregoing issues of fact I find for the respondents. But upon another ground, in my opinion, the respondents are less fortunate, and this accident may be attributed, in part at least, to their want of reasonable care. It appears that the schooner, on her arrival on the 28th, anchored in the stream opposite the respondents' wharf. The next day one of the respondents came to the end of the wharf and beckoned to the schooner to enter the dock. At that time the tide was at its full height, and if the schooner had started at once she would have reached her berth in safety. But a considerable time was consumed in getting her anchor, and no special haste seems to have been made by those in charge of her; at all events, valuable time was lost, and she did not reach the spot where she first grounded until the tide had

fallen to such an extent as to render it unsafe to proceed. The master knew he was about to enter a dock where his vessel could not float at all conditions of the tide, and he was at fault in attempting to enter such a dock after the tide had fallen. The respondents were also at fault. The respondent who was present should have cautioned the schooner to stop before she reached the point of danger. For this failure of duty the respondents should be held responsible.

The preponderance of the evidence shows the injury to have been caused by the grounding at this point, and the efforts made to move her. As the negligence of both the parties contributed to this result, I pronounce for the libellants for one-half the damages. I do not find that the build of the schooner, being a single-deck, center-board vessel, with great breadth of beam as compared with her draught, rendered her unsuitable to carry a cargo of coal. Nor was it negligence in the master not to enter the dock until the day after her arrival. Stress was laid on both these circumstances by the respondents, but I deem them immaterial.

In repairing the schooner after the accident a second deck was built on her. The libellants claimed this was made necessary by the injuries resulting from the accident. But it was shown she was originally constructed with a view of having a second deck added at some future time. I am of opinion this deck was put on in pursuance of the original plan, and was not made necessary by the injuries received in the dock. In the assessment of damages the expense of the new deck is not to be included.

Interlocutory decree for the libellants accordingly.