THE ANNIE R. LEWIS.

HALL *et al. v.* SHEPPARD *et al.*

*(District Court, D. Massachusetts.* May 30, 1892.)

No. 81.

WHARVES AND WHARFINGERS—OBSTRUCTION—LIABILITY OF WHARFINGER.

A schooner drawing 11 feet 8 inches, loaded with coal owned by and consigned to the respondents under a bill of lading guarantying to her generally 12 feet of water, arrived at respondents' dock. One of the respondents was present at the schooner's arrival, but said nothing to the master. The latter was unacquainted with the obstructions and the tides at the place. The schooner struck a ledge of rock on which at average tides the water was 12 feet deep. Respondents did not own the bed of the river, but dredged it, and occupied and used the wharf to berth vessels. *Held,* that the master had a right to rely on the respondent who was present, and his silence amounted to an express invitation to enter. *Held,* therefore, that respondents were liable.

In Admiralty. Libel by Samuel P. Hall and others against Joel F. Sheppard and others for damages occasioned by stranding at respondents' wharf. Decree for libelants.

*Edward S. Dodge,* for libelants.

*Frederick Cunningham,* for respondents.

NELSON, District Judge. This is a libel *in personam* by the owners of the schooner Annie R. Lewis for injuries sustained by the schooner in entering the respondents' dock. The respondents are coal dealers, and own a private wharf on Monatiquot river, in East Braintree, at the head of navigation, where they receive the delivery of cargoes of coal from vessels. On the early morning of June 22, 1886, the Annie R. Lewis, from Port Johnson, arrived in the river below the wharf, in charge of a pilot and a towboat, having on board a cargo of 355 tons of coal consigned to and owned by the respondents, to be unloaded on the wharf. The bill of lading guaranteed 12 feet of water. The draft of the schooner was 11 feet 8 inches aft. In the bottom of the river a ledge of rocks extended from the lower end of the wharf, across the channel, to the opposite bank. On average tides the depth of water on the rock was 12 feet, but when the tides run low the depth was not sufficient to float vessels drawing 11 feet 8 inches. This was known to the respondents. The master of the schooner was unacquainted with the obstructions in the channel, and also with the run of the tides in the river. The tide on this morning was lower than the average. One of the respondents was present on the wharf, at the time, observing what was going on. The channel was about 50 feet wide. While the tug was attempting to haul the schooner into her berth alongside the wharf, where the coal was to be unloaded, the tide being then at its full height, she grounded on the ledge, and sustained injury. The respondents claim that the attempt to enter was made after the tide had ebbed considerably; also that the guaranty in the bill of lading extended only to average tides. Reference was made to the tide tables at Boston, to show that the tide was on the ebb. But tides in this narrow and crooked river, so far above the sea, must vary

from the tides at Boston, and must also be affected by the flow of the current from above. The guaranty, in terms, extends to all tides, and is not limited to average tides. The master, being ignorant of the channel, had the right to rely on the judgment of the respondent who was present, and, receiving no warning of the danger from him, to assume that the water was sufficient for his vessel. The silence of the respondent, under the circumstances, was equivalent to an assurance that the depth of water was sufficient, and amounted to an express invitation to enter. The circumstance that the respondents did not own the title to the bed of the river is immaterial, since they dredged it out, and occupied it, and used it as a berth for vessels unloading coal. The case of *The Calliope*, (1891,) App. Cas. 11, cited by the respondents, is not in point. In that case there was no guaranty of depth of water, and no invitation to enter, and the court expressly found that the grounding of the vessel was caused by the negligence of the master and pilot, and exonerated the wharfinger on that account. Upon the facts as found, the respondents are responsible for the injury to the schooner. *The John A. Berkman*, 6 Fed. Rep. 535; *Higgins* v. *Gaslight Co.*, 33 Fed. Rep. 295.

Decree for libelants.