## BURR v. KNICKERBOCKER STEAM TOWAGE CO.

(Circuit Court of Appeals, First Circuit.   July 23, 1904.)

No. 524.

**1. TOWAGE—GROUNDING OF TOW—PRESUMPTION OF NEGLIGENT TOWAGE.**
Where it was shown that the moving of a schooner from her dock up the river to a wider part of the channel, to be there turned and headed for the sea, was in sole charge of a tug, and that, although it was a calm summer day, with a moderate tide, and the schooner's helm was hard aport, she ran aground on the port side of the channel before she had gone more than three or four lengths, a prima facie case of negligence against the tug is made out, and to exonerate herself from liability she has the burden of showing that the accident occurred from some cause for which she was not in fault.

Appeal from the District Court of the United States for the District of Maine.

In Admiralty.   Suit against tug for injury of tow by grounding.

Benjamin Thompson, for appellant.
A. Nathan Williams, for appellee.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge.   We are of the opinion that the grounding of the four-masted schooner Mary Manning on the westerly shore of the Penobscot river about two miles below Bangor, August 20, 1900, was through the fault of the steam tug Seguin.

The Seguin undertook to move the schooner from the American Ice Company's wharf on the westerly shore of the river, and to tow her up the river some 1,400 or 1,500 feet, to a place where the channel was wider, and there to turn her, preparatory to her departure on her voyage.   The schooner had an outside berth at the wharf; the schooner Charles A. Campbell having the inside berth.   The Manning was headed up the river, and was loaded with ice.   Her draft was 19 feet 4 inches forward, and 19 feet 3 inches aft.   The channel opposite the wharf was about 270 feet wide.

Whether she could have been turned at the wharf is an immaterial question, since there is no doubt that it was proper to take her up the river to a wider place, where it was customary to turn large vessels.   There was an abundance of water to carry her clear, and there was no danger of grounding if the Manning had moved directly up the river or out into the stream.   Unless the schooner moved in farther towards the westerly shore, there was no danger of touching bottom.

The Seguin had entire charge of moving the schooner, and there was no reason, so far as we can see, why, with the exercise of ordinary skill, the schooner could not have been kept off the shore.   The tide was running up the river from half a mile to a mile an hour,

with a set towards the easterly shore, and there was practically no wind to affect the vessel.

The answer alleges that:

"The tug made fast to libelant's vessel by a hawser over her starboard bow, and started ahead, and proceeded out into the channel, then headed up the river so as to bring a strain on the vessel's bow off shore; that the tug had only proceeded a short distance when the vessel took an unexpected sheer inshore and grounded after she had proceeded about three or four times her length; that the grounding was in no way due to the fault of the tug, but was wholly due to the fault of the vessel in not following in the direction of the tug."

There is no direct evidence of any fault of the schooner, but, on the contrary, there is direct and uncontradicted evidence that the schooner's wheel was hard aport throughout.

Under such circumstances, the fact that the schooner went aground casts upon the tug the burden of establishing some excuse for the deviation from the usual and proper course.

The Steamer Webb, 14 Wall. 406, 20 L. Ed. 774, is cited to the proposition that no presumption of negligence arises from the mere fact of damage to a tow. In that case, however, the court said (page 414, 14 Wall., 20 L. Ed. 774):

"But there may be cases in which the result is a safe criterion by which to judge of the character of the act which has caused it. Had the ship in this case been towed upon the shoal ten miles north or ten miles east of Handkerchief Shoal, after leaving that shoal for Cross Rip, it cannot be doubted that the fact of the stranding at such a place would, in the absence of explanation, be almost conclusive evidence of unskillfulness or carelessness in the navigation of the tug. The place where the injury occurred would be considered in connection with the injury itself, and together they would very satisfactorily show a breach of the contract, if no excuse were given. At least they would be sufficient to cast upon the claimants of the tug the burden of establishing some excuse for the deviation from the usual and proper course."

In Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 554, 555, 11 Sup. Ct. 653, 35 L. Ed. 270, it was said:

"The whole effect of the instruction in question, as applied to the case before the jury, was that if the steamboat, on a calm day, and in smooth water, was thrown with such force against a wharf properly built as to tear up some of the planks of the flooring, this would be prima facie evidence of negligence on the part of the defendant's agents in making the landing, unless upon the whole evidence in the case this prima facie evidence was rebutted. As such damage to a wharf is not ordinarily done by a steamboat under control of her officers and carefully managed by them, evidence that such damage was done in this case was prima facie, and, if unexplained, sufficient, evidence of negligence on their part, and the jury might properly be so instructed. Stokes v. Saltonstall, 13 Pet. 181, 10 L. Ed. 115; Transportation Co. v. Downer, 11 Wall. 129, 134, 20 L. Ed. 160; Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 877; Le Barron v. East Boston Ferry, 11 Allen, 312, 317, 87 Am. Dec. 717; Feital v. Middlesex Railroad, 109 Mass. 398, 12 Am. Rep. 720; Rose v. Stephens & Condit Co. (C. C.) 11 Fed. 438."

In order to prove negligence, it is not invariably necessary that the libelant shall show the specific details of negligence, or account for the exact manner in which the injury is inflicted. When the libelant proved that the moving of the vessel was in sole charge of

the tug, that the schooner's wheel was hard aport, and that on a summer afternoon, with a light breeze and moderate tide, and with nothing to prevent the tug from having such full control of the schooner as would keep her in deep water, she was so towed that she came up on the westerly shore, or upon a well-known rock, before she had gone more than three or four lengths, a prima facie case of negligence was established.

The learned District Judge, though finding that the accident was not properly accounted for, declined to hold the tug responsible in damages. We are of the opinion that this was error, and that, under the rule of the cases cited, the burden of explanation was cast upon the tug to account for this apparently unnecessary grounding. The tug proved no fault in the management of the schooner, and gave no reasonable explanation why she did not keep the schooner under control. Upon this showing alone the libelant was entitled to a decree for damages.

The libelant contends also that upon the admitted fact that the tug took the hawser off the Manning's starboard bow, and ordered 40 fathoms of line to be paid out before starting, she should be held negligent, as under such circumstances she could not have any control over the tow.

Evidence was offered to show that this manner of towing a vessel was in itself, under the circumstances, dangerous and unskillful.

We find it unnecessary, however, to determine whether a tow could be properly controlled, in such a situation, while on a 40-fathom hawser. It is enough to decide that the schooner was not properly controlled, and that she was permitted to ground, without fault on her part, when there was no reason why she could not have been kept clear.

The case is remanded to the District Court, with directions to amend its decree by allowing damages for the grounding of the Manning on the westerly side of the Penobscot river, and for further proceedings not inconsistent with this opinion, and the appellant recovers his costs of appeal.