BOSTON, C. C. & N. Y. CANAL CO. v. STAPLES TRANSP. CO.

(Circuit Court of Appeals, First Circuit. November 5, 1917.)

No. 1283.

CANALS ⬅➡29—OPERATION—INJURY TO VESSEL NAVIGATING—HIDDEN OB-
STRUCTIONS.

Respondent undertook to take libelant's tug and barge in tow through the Cape Cod Canal, of which respondent was owner. It provided a helping tug and also a pilot, who had sole charge of the navigation of all the vessels. During the passage libelant's tug struck an obstruction and was sunk. The obstruction was a rocky peak on a shoal, which had not been removed when the canal was dug, and which extended to within 7 feet of the surface at low water. The draft of the tug was 12 feet. The canal was not completed, but had been opened by respondent for the passage of vessels of 15 feet draft or less, and the main channel was of sufficient depth. The rock was somewhat out of such channel on the sloping bank, but where the water should have been of sufficient depth for the tug. Its presence was not in fact known to respondent or its pilot. *Held*, that respondent, having undertaken, not only to provide a safe passageway for libelant's vessel, but also the duty of piloting them, was bound to know of and guard against any existing obstructions, that the grounding raised a presumption of its negligence, and that, in the absence of proof of negligence or fault on the part of libelant's vessels, it was liable for the loss.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Suit in admiralty by the Staples Transportation Company against the Boston, Cape Cod & New York Canal Company. Decree for libelant, and respondent appeals. Affirmed.

Edwin H. Abbot, Jr., and Samuel H. Pillsbury, both of Boston, Mass. (Currier, Young & Pillsbury, of Boston, Mass., on the brief), for appellant.

Edward E. Blodgett, of Boston, Mass. (Albert T. Gould and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., on the brief), for appellee.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

DODGE, Circuit Judge. When they received the injuries for which the District Court has awarded damages, the appellee's tug and barge were passing northward through the appellant's canal.

Not only were they in the canal and using it as above by the appellant's invitation, but, in consideration of the agreed tolls, the appellant had also undertaken to pilot them through the canal. Its pilot was in charge of them, in performance of said undertaking. He was in sole control of their movements. The officers and crew of each vessel were for the time being acting under his orders. We find no error in the conclusions of the District Court to this effect. The evidence does not support the appellant's contention that his control was shared by or exercised jointly with the mate of the tug or any one else. One of the

appellant's tugs, also under said pilot's sole control, was assisting in the operation of taking the appellee's tug and barge through the canal. No sailing vessel was at the time being permitted to go through unless towed, and no tug to go through with a tow unless under charge of a pilot whose license included navigation of the canal.

Of the existence or location of the obstruction in the canal which occasioned these damages no person who took any part in the operation of getting them through the canal, whether in the appellee's employ or in that of the canal company, is shown to have had any actual knowledge. The obstruction was under water, unmarked in any way, and invisible. There was no negligence going to the extent of failure to avoid an actually known obstruction, either on the part of said pilot or of any one else. Whether or not the canal company is liable for the damage inflicted by or due to the presence of said obstruction is the question presented by the appeal.

So far from being of recent origin, or accidental or temporary in its nature, we see no reason to doubt that this obstruction was permanent and had been left in the bottom when the canal was dug, or that it consisted of a shoal extending about 25 feet up and down the canal and about 41 feet from its northerly bank at low water, having near its end farthest from said bank a sharp, rocky peak not over 7 feet below the surface at low water, and nearer the surface than any part of the shoal between it and the bank. The danger from such an obstruction, to a vessel drawing 12 feet of water, which was the draft at the time of the appellee's tug, is obvious. The rocky peak caught the tug's port bilge, so damaging her bottom as to make her fill and sink. Her sudden stoppage caused the barge, to whose port quarter she was made fast, to break away and run aground upon the south bank of the canal, somewhat farther to the eastward.

While not an insurer against all damage by defects or obstructions in its canal, if the canal company knew or ought to have known that such an obstruction existed therein, it is undoubtedly liable for injuries caused by its presence to vessels using the canal, as these were, by its invitation and without warning of the danger to be apprehended from said obstruction, unless contributing fault on their part is shown. The rule here applicable is the same as that which has been so often applied in suits for damage to vessels by obstructions or defects in docks which they have been invited to occupy. Smith v. Burnett, 173 U. S. 430, 19 Sup. Ct. 442, 43 L. Ed. 756, may be referred to; also Union Ice Co. v. Crowell, 55 Fed. 87, 5 C. C. A. 49, decided by this court; and, in the Massachusetts District Court, The John A. Berkman, 6 Fed. 535; The Calvin P. Harris, 33 Fed. 295; The Annie R. Lewis, 50 Fed. 556.

The Massachusetts statute authorizing construction of the canal (Acts 1899, c. 448) required it to have, when constructed, a depth of not less than 25 feet at mean low water, a width of not less than 100 feet at the bottom, suitable slopes, and a surface width of not less than 200 feet. At the time of this accident the construction of the canal was not complete, but it had been announced to the public, in December, 1914, as open for vessels of 15 feet draft, and under. When so

opened it had an average, substantially uniform, surface width of 210 feet between the Bourne and Sagamore highway bridges, which crossed it at a distance from each other of 4.25 miles; and it was in the section of the canal between these two bridges that the accident occurred. In almost all places throughout this section there was a channel at least 100 feet wide at the bottom, having at least 15 feet of depth at mean low water, and substantially corresponding with the middle of the apparent waterway; from each side of which channel the bottom sloped upward to the surface.

Of the above facts those in charge of the tug and of the barge may be taken to have had notice when they entered the canal. The master of each acknowledged the receipt, before they entered, of a printed copy of "General Information and Regulations" issued by the canal company, wherefrom these and other facts regarding the canal could be learned. A statement therein made was, that the steepest side slope was "one vertical on two horizontal." If the responsibility for their navigation through the canal had rested upon them, instead of being assumed, as above stated, by the canal company, it might well have been negligence on their part to allow themselves to get into any part of the canal where water deep enough for a vessel drawing 12 feet, as was the tug at the time, could not reasonably have been expected; in view of the above facts brought to their notice.

These vessels were passing through the canal soon after low water, upon a flood tide which had been running for some time and was causing a 2½-knot current through the canal in the direction in which they were going. Whether the water level at the time of the accident varied materially from that of mean low water, and how much if at all, cannot be very clearly ascertained from the evidence; but it does not appear that there would have been less than 12 feet depth where the obstruction was encountered had no obstruction beyond the normal slope of the bank been there; nor is any such claim made on the canal company's behalf. But even if this had been the case, the responsibility for letting the tug get so far out of the 15-foot channel and over the sloped bank could be placed upon the tug only by proof that she got there through her failure to obey the directions of the canal company's pilot. Having undertaken not only the duty of having the canal free from defects or obstructions likely to injure these vessels, whose presence therein was or ought to have been known to it as above, but also the further duty of piloting them safely through, the canal company was bound to provide a pilot having not only all necessary knowledge as to the various depths of water in the canal at various stages of the tide, where it contained no defects or obstructions, but also all such knowledge regarding existing defects or obstructions below the surface as the canal company itself had or ought to have had. If either of the vessels under its pilot's charge got to a point too far out of the 15-foot channel or too near the bank to be safe, for want of sufficient depth, or if either encountered there an obstruction of whose presence the canal company knew or ought to have known, it cannot under these circumstances say either that they were not invited to use that part of the canal, or that they got into it through their own fault, without prov-

ing that they got there in disregard of his orders. Except as thus limited, the full responsibility for the safety of the canal as regarded these vessels, and of all parts thereof into which the pilot allowed them to go was upon the canal company.

The fact that while being thus conducted through its canal by the canal company's pilot, the tug was allowed to strike an obstruction under water, of the above character and in the above location, raises a presumption of negligence on the canal company's part, and casts upon it the burden of accounting for the apparently unnecessary grounding. The same rule applies which has been applied in cases where a tug has undertaken to provide safe towage through a given channel, and has failed to get the tow safely through. It must excuse its failure to perform its undertaking by showing that the failure was not caused by any obstruction in the channel which was or ought to have been known to its officer in control. Burr v. Knickerbocker, etc., Co., 132 Fed. 248, 65 C. C. A. 554; The W. G. Mason, 142 Fed. 913, 74 C. C. A. 83; The Wyomissing, 228 Fed. 186, 142 C. C. A. 542; Great Lakes, etc., Co. v. Shenango, etc., Co., 238 Fed. 480, 485, 151 C. C. A. 416; Great Lakes, etc., Co. v. American, etc., Co., 243 Fed. 849, 852, —— C. C. A. ——.

The canal company had taken cross-sections of the canal, by soundings upon lines across it at fixed stations 50 feet apart throughout its length, and these soundings had been repeated at regular intervals. The shoal and rocky peak had not been discovered by any of these soundings, because they happened to come between two of said fixed stations. It had also "swept" the 15-foot channel in the previous July, in search of obstructions therein, and had tried to "sweep" the slopes also, but without success, for want of a practical method of sweeping applicable to them. We are, nevertheless, of opinion that it has not excused its confessed ignorance of the existence of the obstruction which caused this accident. The evidence satisfies us, as it did the learned District Judge, that the obstruction was one not removed from the bottom, as it ought to have been, when the canal was dredged. The dredging, it is true, was done, not by the company here appellant, but by the Canal Construction Company, a different corporation, under contract. The latter company was also made a defendant in this libel, but as against it the libel has been dismissed, the remaining parties thereupon stipulating that if either of said companies is liable for these damages, the present appellant is alone liable. We agree with the District Judge that those in charge of the construction company's dredges and shovels must have known that the obstruction which caused the tug's injuries had not been removed when that part of the canal was dug; and this we consider sufficient to charge the canal company with knowledge that it was there when these vessels were admitted to use the canal. Its pilot ought, therefore, to have known and avoided the danger to them involved in its presence where it was; and for failure to avoid such danger due to his admitted want of such knowledge it cannot escape liability. We find no error, therefore, in the finding of the court below that the canal company was negligent in failing to discover the obstruction and to mark or remove it.

We think it clear from the evidence that the sole cause of the accident was the pilot's want of knowledge regarding the obstruction. He was trying, when it occurred, to get the vessels past a dredge anchored in the canal on its southerly side, so as to project into the limits of the 15-foot channel and thus leave considerably less than its full width open at that point. Supposing, as he did, that there was no reason forbidding him to do so, and in order to keep these vessels at a safe distance from contact with the dredge, he permitted them to get near enough to the north bank to bring the tug far enough outside the limits of the 15-foot channel to strike the obstruction, which was, as has appeared, only a few feet outside said limits.

We agree with the conclusions of the District Court that the evidence shows neither failure on the tug's part to obey the pilot's orders regarding the course she was to steer, nor that she got outside the limits of the 15-foot channel and nearer the north bank because of such failure.

The canal company's tug which was assisting in towing the appellee's tug and barge was preceding them at the time. One of the canal company's regulations required tugs navigating the canal with a tow astern to proceed only against the current. The same regulation also provided that if a tug was towing boats abreast, their total width must not exceed 40 feet. The total width of the appellee's tug and barge, which were abreast each other, as has been stated, was over 57 feet. The fact that its own pilot was in control, however, and could have refused to proceed except in compliance with the above provisions, debars the canal company, in our opinion, from asserting noncompliance with its regulations as a defense.

We find no error in the decree appealed from, all the assignments of error being in effect disposed of by what has been said.

The decree of the District Court is affirmed, with interest, and the appellee recovers its costs of appeal.