507 F.2d 467
 MERRILL TRUST COMPANY, Executor of the Estates of Dean W.
Footman and Priscilla L. Footman, Plaintiff-Appellant,
v.
Merrill BRADFORD, Executor of the Estates of Charles D.
Meyer and Sandra W. Meyer, Defendant-Appellee.
 No. 74-1296.
 United States Court of Appeals, First Circuit.
 Argued Nov. 5, 1974.
Decided Dec. 5, 1974.
 
 U. Charles Remmel, II, Portland, Me., with whom David P. Cluchey and Thompson, Willard & McNaboe, Portland, Me., were on brief, for plaintiff-appellant.
 William W. Willard, Portland, Me., with whom Herbert H. Sawyer, Bernstein, Shur, Sawyer & Nelson, Portland, Me., John L. Quinlan, James S. McMahon, Jr., and Bigham, Englar, Jones & Houston, New York City, were on brief, for defendant-appellee.
 Before COFFIN, Chief Judge, ALDRICH, and CAMPBELL, Circuit Judges.
 ALDRICH, Senior Circuit Judge.
 
 
 1
 Little purpose would be serbed in detailing the facts preceding the unfortunate stranding, in the middle of a rainy, foggy night in May, 1970, of the 30-foot ketch, Thalassa, on the westerly side of Lobster Point, near the southwesterly end of Monhegan Island, Maine. The yacht was bound in a general northeasterly direction on an outside run from Plymouth, Massachusetts into Penobscot Bay, a course which led directly by Monhegan, and hence to its home port of Camden. The wind was southwest, 15-25 knots; the seas were about four feet, and there were no survivors. At the point of impact, and generally, Monhegan has a bold shore, and by morning, when the wreck was discovered stern to the shore, the fiberglass hull was separated from the keel and broken, except to leave erect and out of water the mast which was still carrying the mainsail. The bodies of all who had been aboard were found nearby.
 
 
 2
 This action was brought by the representative of the estates of Mr. and Mrs. Footman, guests aboard, against the estates of Mr. and Mrs. Meyer, the true and registered owners, respectively. The vessel was well found, and there is no claim of unseaworthiness. The district court dismissed the complaint, after a full opinion, because of a failure to find negligence on the part of either Meyer.
 
 
 3
 Plaintiff argues that since the case was tried mainly on depositions, the 'clearly erroneous' provision of F.R.Civ.P. 52(a) does not apply. That is not so, at least in this circuit. Custom Paper Products Co. v. Atlantic Paper Box Co., 1 Cir., 1972, 469 F.2d 178; cf. C. A. Wright, Law of Federal Courts, 2d ed. 1970, pp. 430-31. However, plaintiff has a better claim. We construe the court's statement that 'upon the entire record (it) is compelled to conclude that plaintiff has failed to establish its burden of proof that the sinking of the Thalassa and the Footmans' deaths resulted from any negligence of the Mayers' as in part, after making certain findings we will refer to, a ruling of evidentiary insufficiency, not a choice between permissible conflicting conclusions. We consider the appeal on that basis. However, we affirm.
 
 
 4
 While the evidence warrants, and indeed perhaps compels a finding that Mr. Meyer, hereinafter Meyer, as owner and master aboard, had ultimate authority, it correspondingly requires a finding that Mr. Footman, hereinafter Footman, was a fellow yacht-owner and close friend whose judgment Meyer fully respected. Much of the brief is devoted to the decision to make the outside run, and whether it was by common consent. Although a Camden native spoke of Meyer and Footman only as 'about average weekend sailors,' they had taken such trips before and we have no reason to fault the district court's failure to find negligence, whoever made the decision. But we add that plaintiff's contention that Meyer, as owner-master, had the ultimate power of decision, and could even put the Footmans ashore, proves too much. The Footmans, unlike seamen who were under contract and earning their living, were equally free to go ashore if they did not concur. Absent some special circumstances, the concept that a yachting party can embark on a trip and then sue the owner because it was a risky undertaking does not appeal to us. This is not to say that in the case of an uninformed guest there might not be a duty to disclose the possible risks, so that there could be a free choice. No such question could arise here as to either Footman. The court found that 'since their marriage in 1958, Dean and Priscilla Footman had spent a great deal of time sailing . . .. Both had taken and passed the Power Squadron courses in piloting, seamanship and advanced piloting, had participated in several overnight ocean races . . .. Both were competent to navigate, and both had at least some experience with night sailing and with stormy and foggy conditions.' On this record it cannot be thought that either Footman was not fully aware of the normal hazards of the voyage, hazards which might lead to an accidnet regardless of fault. Our interest, accordingly, must be in whether these risks were increased by subsequent negligence, and if so, by whom. The difficulty here is, there is no answer.
 
 
 5
 First, the possible errors. The basic one, of course, was a misjudgment of their position. The vessel was equipped with a Kenyon log. No one testified to it, but for what it was worth it may be suggested that the long continued southwest wind produced a forward set that, of course, the log failed to register and that the navigator, or navigators, failed to take into account. But, equally, we would take judicial notice that dead reckoning, with winds, tidal currents, and the difficulty of steering a small boat on a precise course, is not in any case an exact science. The more chargeable neglect may be sought in the failure to discover that the vessel was not where they believed themselves to be.
 
 
 6
 Manana Island, immediately westward of Monhegan, has a foghorn, which the evidence shows was operating. However, it was downwind. The Coast Pilot and other authorities recite that freakish things may happen to sound, and that there may not only be misleading direction, but areas of occlusion. It cannot be said with any confidence that there was actionable error here.
 
 
 7
 Secondly, the vessel possessed a radio direction finder (RDF), which was recovered in a turned-on condition. Plaintiff's expert testified that by cross bearings on Manana and other radio beacon stations a fix could have been obtained. Some members of the panel are tempted to question the dependability of this fix, partly because of the nature of RDF's, but more because of the unfavorable conditions: a small boat, a following wind and a considerable sea. However, we will accept plaintiff's contention that the operator of the finder may have been in some manner negligent.
 
 
 8
 It may also be suggested that whoever was in charge of the fathometer was negligent, although in possible extenuation of that individual we note depths of over 200 feet to within a few hundred yards of the shore, and very considerable depths almost to the last moment.
 
 
 9
 Continuing, there was, presumably, a watch. Plaintiff's expert suggested the vessel hit the shore head on. The night must have been dark-- by two stopped watches it was one o'clock-- and with inattention by the lookout, the other parties being properly occupied elsewhere, this may have been possible.[1]
 
 
 10
 Without further speculation, this leaves several duties possibly ill performed. But not only do we not know which, we do not know who was performing them.
 
 
 11
 The court warrantably found that it was understood before the commencement of the voyage that 'the responsibility for navigation and management of the vessel would be shared.' The parties dispute the meaning the court attributed to the word 'responsibility,' but at a minimum, having in mind that on a voyage of this length[2] there must be watches, there must be periods where the owner, whatever may be his ultimate legal responsibility, was not the individual in actual charge. Plaintiff's contention that the Footmans were restricted to the 'handling of sails and lines' and were never 'in a position to issue orders,' (viz., in temporary command) is unsupported by the record, and is against common sense.
 
 
 12
 In addition to this physical fact, it appeared that Meyer had particular confidence in Footman's navigational ability. Even if all hands were alerted because of what may have been thought to be a crucial problem of avoiding Monhegan, Footman may well have been the one operating the radio direction finder and, it being dark and rainy, doing piloting calculations, below. The evidence shows that while the owner of the vessel is normally the one to make ultimate decisions, the navigator is the one responsible for giving the ship's position.[3] By the same token, we do not know who was performing other functions, some of which could have been handled by the women.[4] It is not possible that Meyer was doing everything, wheel, compass, RDF, piloting calculations, fathometer and bow watch.
 
 
 13
 In this circumstance we start with elementary principles. Even a seaman 'could not recover if his negligence was the sole cause of the accident,' Sotell v. Maritime Overseas, Inc., 2 Cir., 1973, 474 F.2d 794, 796. While, strictly, the burden of proving contributory negligence is on the defendant, this burden does not arise until plaintiff has met his initial burden of showing defendant's negligence. We quite accept the district court's statement that the evidence warrants the inference that 'as the result of navigational or operational error (the yacht) ran aground on . . . Monhegan Island.' But this does not tell us who made the error, or, for that matter, errors.
 
 
 14
 Plaintiff contends that the answer is supplied by the presumption of fault which arises when a vessel strikes an obvious, or well charted, stationary object. Cf. The Clarita and the Clara, 1874, 90 U.S. (23 Wall.) 1, 14, 23 L.Ed. 146; Cranberry Creek Coal Co. v. Red Star Towing & Transp. Co., 2 Cir., 1929, 33 F.2d 272, 274, cert. denied, 280 U.S. 596, 50 S.Ct. 67, 74 L.Ed. 643; Burr v. Knickerbocker Steam Towage Co., 1 Cir., 1904, 132 F. 248. We do not accept defendant's claim that the presumption is not applicable.[5] However, the presumption is of no assistance. Rationally based upon the premise that such a striking would not occur in the ordinary course, it warrants the inference that someone on board the ship was negligent. This conclusion the district court had already reached. The presumption, however, does not point to any particular individual. Rather, it has been said that the presumption 'operates against all parties participating in the management of the vessel at the time of the contact.' International Terminal Operating Co. v. Naviera Aznar, S.D.N.Y., 1961, 198 F.Supp. 214, 217. See Patterson Terminals, Inc. v. S. S. Johannes Fraus, E.D.Pa., 1962, 209 F.Supp. 705, 708. Plaintiff is confusing legal responsibility as between the vessel and third parties with factual responsibility as between the vessel's members.
 
 
 15
 The owner, asleep on his watch below, or at least the ship, is legally responsible if a careless helmsman strikes a pier. This does not mean that the helmsman can recover for the injury the collision may have occasioned him; nor is there a presumption that the owner, as distinguished from others on the roster as helmsmen, was the one that was at the wheel. When there is no basis for excluding the plaintiff as the party at fault, plaintiff has not carried the burden of proof. This is not to say that a party must make a strong showing to justify an inference against the defendant, but he must be able to point to something beyond mere speculation. Cf. Pennsylvania R.R.Co. v. Chamberlain, 1933, 288 U.S. 333, 339-340, 53 S.Ct. 391, 77 L.Ed. 819; The Jumna, 2 Cir., 1906, 149 F. 171, 173 ('inscrutable' as distinguished from 'inevitable' accident).
 
 
 16
 Plaintiff's final position is that even if it cannot be found that it was Meyer rather than Footman who was in charge of the RDF, it may properly be inferred that it was one or the other, and that Meyer is liable to Mrs. Footman's estate in any event, either for his own or for Footman's negligence. We would accept the factual assumption for present purposes, but we do not accept the conclusion. Meyer could not be liable for Footman's negligence on the ground that Footman was an incompetent person to entrust with the finder, cf. Nuccio v. Royal Indem. Co., E.D.La., 1968, 280 F.Supp. 468 aff'd 5 Cir., 1969, 415 F.2d 228; Traveler's Indem. Co. v. Gulf Weighing Corp., E.D.La., 1972, 352 F.Supp. 335, 341, because clearly he was competent. Consequently Meyer can be held responsible for Footman's negligence only on the ground that he actively participated in it-- which has not been shown-- or on some theory of respondeat superior.
 
 
 17
 As to this last, we start with the proposition that members of a yachting party are not seamen. Cf. Nuccio v. Royal Indemn. Co., ante, 280 F.Supp. at 469.[6] Yachting is not a commercial venture. Moreover, mutual participation in the operation is expected, and in that sense the members of the party are working for each other. If one member makes a mistake because of an improper direction by the owner, the owner may well be liable to the others, but if injury occurs solely by reason of the member's own negligence, to that extent the owner and the others are in the venture together. We are aware of no authority that would impose liability on a non-negligent owner. Nor, so far as we know it, is there any such custom. It should be enough that the owner assigns the work to parties he has reason to believe competent to handle it. A finding that Footman erred in operating the RDF would not help the plaintiff.
 
 
 18
 The cause of this unfortunate accident has not been resolved factually. It cannot be resolved legally.
 
 
 19
 Affirmed.
 
 
 20
 LEVIN H. CAMPBELL, Circuit Judge (concurring).
 
 
 21
 I concur in everything said by the court.
 
 
 22
 The nub of appellant's case is the asserted right to prevail, without direct evidence, on the strength of two presumptions, first that the accident was negligently caused and second that the negligence must have been that of the captain-owner. The second, as Judge Aldrich demonstrates, is too generous if applied in favor of knowledgeable yachting companions sharing in an amateur voyage. There is no good reason why the absence of evidence should entitle them to prevail. If there had been survivors, the Footmans, even assuming they could prove that Meyer was negligent, are likely to have faced affirmative defenses based on their own close participation in any negligent acts and decisions. While there is a strong policy that those in charge of boats should not evade a proper responsibility for their vessel's harm to innocent third parties, passengers and those in their employ, there is no reason when experienced friends go sailing together that the owner should be presumptively accountable to the others for all negligence in the operation of the vessel.
 
 
 
 [1]
 The writer would suggest a somewhat different procedure. The shore, except for the dark, well marked by breakers, may have been seen at the last moment, but with the mainsail out, surely no one on the sheet, no jib, and a sea behind them, the vessel may have lost way when they turned and been backed into the breakers before it was possible to do anything. Even if this suggestion is correct, it does not necessarily absolve the lookout
 
 
 [2]
 The strand occurred some 36 hours, if one may judge from the stopped wristwatches, after the departure from Plymouth
 
 
 [3]
 Plaintiff suggests that Meyer, having ultimate command, must at some point have deliberately gone too close to Monhegan. This, however, assumes the point. It would seem obvious that no one meant them to be where-- or, for that matter, near where-- they were. Quite apart from a desirable margin of safety, the vessel was 1/4 mile west of the easterly end of the island. The question is who was responsible for the mistake
 
 
 [4]
 We do not take the testimony that the wives were to work the galley as excluding them from the lighter deck jobs. Mrs. Footman had been heard to say before the voyage that she was going to participate in the navigation
 
 
 [5]
 Defendant's contention that the presumption does not apply because only the island was the stationary object, but not 'the rock under the water which surrounds the island,' conjures superlatives we do not care to express
 
 
 [6]
 There may, of course, be persons aboard who are seamen. Sometimes the line may be difficult to draw, cf. In re Read's Petition, S.D.Fla., 1963, 224 F.Supp. 241, 244-246, but it could not be said that the Footmans were on the employee side thereof