CARTER, Judge:
Plaintiff, Gulf Craft, Inc., brought this action against Stagg Marine, Inc. and Ou-bre Industries, Inc. for alleged damages to Hull No. 256, a vessel under construction, while the hull was in tow.
Gulf Craft had contracted with Stagg Marine to tow Hull No. 256 from Simmes-port to Patterson. Rather than performing the service itself, Stagg, unbeknownst to Gulf Craft, Inc., engaged Oubre Industries to conduct the tow. The hull was towed on the Atchafalaya River from Simmesport to Patterson by the M/V Captain Troy, a tug boat owned and operated by Oubre Industries.
Sometime during the early morning hours of March 26, 1982, the M/V Captain Troy collided violently with the Missouri Pacific Railroad Bridge at Krotz Springs. The starboard (left) side of the hull was “hipped” to the M/V Captain Troy’s port (right) side. As the M/V Captain Troy proceeded under the bridge, the vessel’s starboard side struck the bridge stanchion. Upon impact, the 1⅛" polypros lines securing the tug to the vessel snapped and the hull broke free and continued to float down the river.
The M/V Captain Troy backed through the bridge and pursued its tow. Ultimately, the M/V Captain Troy regained control of the hull and delivered it to the Gulf Craft yard in Patterson the following day.
On March 29, 1982, Gulf Craft personnel removed the hull from its slip at the Gulf Craft yard and placed the hull into its building to complete the construction. Upon hearing about the collision at the Krotz Springs bridge, Gulf Craft personnel inspected the hull in the area of the bow, but found no damage.[1]
*1285 On May 4, 1982, the damage was discovered by an employee of Gulf Craft. This employee reported his findings which were ultimately brought to the attention of Mr. Pecoraro, Vice-President and General Manager of Gulf Craft.
Closer examination then revealed the following damage. The unfinished aluminum hull sustained damage on the starboard side roughly 20' forward of the stern and continuing for approximately another 20'. The side plating itself was indented approximately 2V2". Additionally, on the starboard side there was one small area approximately 18" X 18" that was dented approximately ¾ of an inch and another area on the starboard side that was indented about an inch and a quarter. There was also damage to the internal structure of the hull with distortion of framing in the damaged area and several frames were cracked and twisted.
Gulf Craft subsequently filed suit against Stagg Marine and Oubre Industries alleging that defendants negligently damaged Hull No. 256. After trial on the merits, the trial court found that defendants were liable for the damage to the hull and rendered judgment in favor of Gulf Craft in the amount of $6,490.56. From this adverse judgment, defendants appeal assigning the following specifications of error:
(1) The trial court erred in denying defendants’ motion to dismiss at the close of plaintiff’s evidence; and,
(2) The trial court erred in finding defendants liable for the damage to Hull No. 256.
ASSIGNMENT OF ERROR NO. 1
Defendants contend that the trial court erred in denying their motion for directed verdict because plaintiff failed to establish its claim by a preponderance of the evidence.
LSA-C.C.P. art. 1810 describes the motion for directed verdict as follows:
“A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.”
This Court cited the proper standard for applying LSA-C.C.P. art. 1810 in Thomas v. Thom, 408 So.2d 442 (La.App. 1st Cir. 1981), writ denied, 412 So.2d 85 (La.1982):
“In non-jury cases, the appropriate standard for the trial court’s determination of a motion for directed verdict is whether plaintiff has presented sufficient evidence on her case-in-chief to establish her claim by a preponderance of the evidence. Bryan v. Varnado, 394 So.2d 1321 (La.App. 1st Cir.1981); Sevin v. Shape Spa for Health & Beauty Inc., 384 So.2d 1011 (La.App. 4th Cir.1980). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to plaintiff but may instead render judgment based upon a preponderance of the evidence. Bryan v. Var-nado, supra. Moreover, the directed verdict in a non-jury case should not be reversed in the absence of manifest error. Littles v. Southeastern Fidelity Insurance Co., 398 So.2d 575 (La.App. 1st Cir.1980).”
Plaintiff’s cause of action is based on negligence, thus he must establish “fault” on the part of the defendants. *1286 Plaintiff must show that there is a duty owed by the defendant or by someone for whom the defendant is answerable to the plaintiff, that there was a breach of this duty, and that this breach of duty is the cause-in-fact of the damages suffered by the plaintiff. Williams v. Louisiana Machinery Co., Inc., 387 So.2d 8 (La.App. 3rd Cir.1980).
The United States Supreme Court in Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932), upon the question of the duty and liability of a tug under a towage contract, held (1) that the tug is not a bailee of the vessel in tow or her cargo; (2) that a suit by the owner of the tow to recover for an injury to the tow caused by negligence on the part of the tug is an action ex delicto; (3) that the tug is not liable as an insurer or as a common carrier, but owes to the tow the duty to exercise such reasonable care and maritime skill as prudent navigators employ for the performance of similar services; and (4) that the mere fact that the tow was in good condition when received by the tug, and in damaged condition when delivered, does not raise any presumption of fault on the part of those performing the towage service.
However, when a moving vessel collides with a fixed object there is a presumption that the moving vessel is at fault, and this presumption suffices to make out a prima facie case of negligence against the vessel. Woods v. United States, Dept. of Transp., 681 F.2d 988 (5th Cir.1982); Brown and Root Marine Operators, Inc. v. Zapata Off-Shore Co., 377 F.2d 724 (5th Cir.1967). This presumption of negligence applies to the operator as well as to the vessel and works against all parties participating in the management of the vessel at the time of the contact. Merrill Trust Co. v. Bradford, 507 F.2d 467 (1st Cir.1974). See also Freeport Sulphur Co. v. S/S HERMOSA, 526 F.2d 300 (5th Cir.1976).
Analyzing the instant case in light of the above-cited legal principles, we find no error in the trial court’s denial of defendants’ motion for directed verdict at the close of plaintiff’s evidence. A review of the record clearly demonstrates that plaintiff presented sufficient evidence on its case-in-chief to establish its claim by a preponderance of the evidence.
The deposition of Robert J. Williams, bridge tender for Missouri Pacific Railroad, reveals that in the early morning hours of March 26, 1982, the M/V Captain Troy collided with the Missouri Pacific Railroad bridge over the Atchfalaya River at Krotz Springs, Louisiana. Williams personally witnessed the collision and the events immediately following the collision, including the snapping of the lines connecting Hull No. 256 to the M/V Captain Troy and the breaking free of the hull. The testimony of William A. Pecoraro, vice-president and general manager of Gulf Craft, established that the hull had been properly launched and that the hull had not been damaged while in the possession of Gulf Craft after its delivery to Patterson. Daniel L. McCloy, Jr., marine surveyor for Wright Marine Surveyor, Inc., investigated the damages and rendered an opinion as to the cause of those damages. McCloy’s investigation and testimony revealed the following:
“First, I would like to say that if he hit that bridge the way the tender says there, in my opinion there was impact between the two hulls; because it was forcing that tug away from the pier, the angle that he hit on. The hull was still coming down with all the current that they have at Krotz Springs, and I spent sixty-four days up there in the springtime salvaging a barge. He was coming down and you weren’t going to get him to shift away. That’s what I’m saying, in my opinion, there was impact between the two vessels if that occurred. Upon impact, I feel the steel hull would have damaged this aluminum hull.”
Clearly, the trial court correctly denied defendants’ motion for directed verdict at the close of plaintiff’s case since plaintiff presented sufficient evidence and established a prima facie showing of damage *1287 to Hull No. 256 through defendants’ negli£ence-
ASSIGNMENT OF ERROR NO. 2
Defendants further contend that the trial court should have found the defendants not liable for the damages to the hull discovered over thirty days after the defendants relinquished control of the hull to plaintiff.
As we noted in the previous assignment of error, when a moving vessel collides with a fixed object there is a presumption that the moving vessel is at fault. The burden of disproving fault by the moving vessel then requires demonstration that its operator did all that reasonable care required. Woods v. United States, Dept. of Transp., supra; Brown and Root Marine Operators, Inc. v. Zapata Off-Shore Co., supra.
This defendants failed to do. Defendants’ only witnesses were Ray Anthony Oubre, owner of the M/Y Captain Troy, and Dale P. Renthrope, owner of Stagg Marine. Oubre testified that in his opinion the M/V Captain Troy could not have caused the damage to the hull. This testimony was contradicted by Daniel L. McCloy, Jr., a marine surveyor for Wright Marine Surveying, Inc. Mr. McCloy testified as follows:
“A. Okay. Taking the information that I know now; what happened, according to the bridge tender, I would say that the most probable cause for the damage sustained to the hull would have been the impact between the two vessels.”
Furthermore, neither the captain nor the deckhand of the M/V Captain Troy were called to testify. In fact, no evidence was adduced that the operator of the M/V Captain Troy exercised the required reasonable care.
For the above reasons, the judgment of the trial court is affirmed. Costs are to be assessed against defendant-appellants.
AFFIRMED.

. Mr. Pecoraro, Vice-President and General Manager of Gulf Craft, testified that upon being informed that the tug boat hit the bridge piling, that he assumed that the hull also hit the bridge and the bow being the furthermost point sticking out, he assumed that it was the area that was hit. He testified that he examined the bow, looked on each side, and didn’t see any damage, *1285 and took it for granted that as of that date there was no damage. Mr. Pecoraro further testified that from March 29, 1982, until May 4, 1982, the date that the damage to the hull was discovered, that the hull was up against the building and there was nothing that could have happened to it and no way that it could have been damaged from March 29, 1982 until May 4, 1982, while in Gulf Craft's custody.