A. L. HOLDEN et al., doing business under the name and style of R. L. Pritchard & Company, Appellants,

v.

S. S. KENDALL FISH, her engines, etc., et al., Appellees.

No. 24615.

United States Court of Appeals
Fifth Circuit.

June 12, 1968.

Henry J. Read, New Orleans, La., Hill, Rivkins, Warburton, McGowan & Carey, New York City, Montgomery, Barnett, Brown & Read, New Orleans, La., of counsel, for appellants.

Benjamin W. Yancey, New Orleans, La., Terriberry, Rault, Carroll, Yancey & Farrell, New Orleans, La., of counsel, for appellees.

Before COLEMAN and GOLDBERG, Circuit Judges, and HANNAY, District Judge.

GOLDBERG, Circuit Judge.

This is a case of statutory construction, specifically, the interrelation of Sections 1304(5) and 1305 of the Carriage of Goods by Sea Act of 1936 (COGSA).[1]

7. "CARRIAGE OF GOODS BY SEA, 46 U.S.C.A. §§ 1304(5) and 1305.

Section 1304(5). *Rights and immunities of carrier and ship—Unseaworthiness*

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

By agreement between the carrier, master or agent of the carrier, and the shipper another maximum amount than that mentioned in this paragraph may be fixed: *Provided*, That such maximum shall not be less than the figure above named. *In no event shall the carrier be liable for more than the amount of damage actually sustained.*

Neither the carrier nor the ship shall be responsible in any event for loss or damage to or in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading."

"Section 1305. *Surrender of rights; increase of liabilities; charter parties; general average*

A carrier shall be at liberty to surrender in whole or in part all or any of his rights and immunities or to increase any of his responsibilities and liabilities under this chapter, provided such surrender or increase shall be embodied in the bill of lading issued to the shipper.

The provisions of this chapter shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter. Noth-

In 1952, the cargo ship SS Kendall Fish sailed from North Africa to New Orleans laden with bales of sisal which were being imported from British East Africa under the Strategic and Critical Stock Piling Act, 50 U.S.C. § 98 et seq. The sisal arrived at the port of New Orleans in poor condition necessitating a monetary adjustment between the parties. In 1962, after many continuances sought and gained by appellees, liability was found to exist and the question of damages was submitted to a Master. Holden v. S.S. Kendall Fish, E.D.La. 1962, 212 F.Supp. 106. It is the award of the Master, affirmed by the district court, which is before us for review. We affirm.

The Master accepted as determinative the market price of sisal at New Orleans at the time of delivery. He thus computed damages at $7,656.84. The bill of lading, however, provided that damages should be calculated on the basis of invoice value, plus freight and insurance, at the port of departure. By this method of computation damages would have been $20,027.73.[2] The controlling issue is whether the carrier and the shipper were free to contract future valuations for lost or damaged goods, or whether Section 1304(5) of COGSA restricted that privilege.

Judge Heebe, in a superb opinion in this case below, has set forth the law with exceptional clarity. Holden v. S.S. Kendall Fish, E.D.La.1962, 262 F.Supp. 862. After tracing both pre-COGSA and post-COGSA judicial history, he concludes that Section 1304(5) supersedes any potentially conflicting language in Section 1305 and that "the amount of damage actually sustained," as prescribed in Section 1304(5), did not here exceed the market price at the point of destination. We are in complete accord with Judge Heebe's analysis and find it necessary to add only a few general observations.

Courts have consistently held that COGSA seeks the economic realities of the loss rather than the contractual bargain. Daido Line v. Thomas P. Gonzalez Corp., 9 Cir. 1962, 299 F.2d 669, 676; Otis McAllister & Co. v. Skibs, 9 Cir. 1958, 260 F.2d 181, cert. den., 1959, 359 U.S. 915, 79 S.Ct. 584, 3 L.Ed.2d 576; The Steel Inventor, D.Md.1940, 35 F. Supp. 986, 996–998. See also Smith v. The Ferncliff, 1939, 306 U.S. 444, 450, 59 S.Ct. 615, 617, 83 L.Ed. 862, 866.[3] If the sisal had been delivered in good condition, its worth to the buyer would have been determined by the market price at the port of destination. Such

---

ing in this chapter shall be held to prevent the insertion in a bill of lading of any lawful provision regarding general average. Apr. 16, 1936, c. 229, § 5, 49 Stat. 1211." (Emphasis added.)

2. In our inflationary era, prices of one day are generally less than those of the next. This case is unique in that the market price at the port of destination was substantially lower than the C.I.F. valuation in the bill of lading.

3. These decisions are in line with the spirit of the Hague Rules of 1921, the Brussels Convention of 1922–24, and the various statutes known as the Carriage of Goods by Sea Acts which reflect a desire to promote international congruity in maritime commercial transactions. For authorities discussing the various purposes of COGSA see Standard Electrica, S.A. v. Hamburg Sudamerikanische Dampfschifffahrts-Gesellschaft and Columbus Lines, Inc., 2 Cir. 1967, 375 F.2d

943, cert. den., 389 U.S. 831, 88 S.Ct. 97, 19 L.Ed.2d 89; Morrisey v. S. S. A. & J. Faith, et al., N.D.Ohio 1965, 252 F. Supp. 54; Caterpillar Americas Company v. S. S. Sea Roads, S.D.Fla.1964, 231 F. Supp. 647; Pannell v. The S. S. American Flyer, S.D.N.Y.1957, 157 F.Supp. 422, modified, Pannell v. United States Lines Co., 2 Cir. 1959, 263 F.2d 497, cert. den., 359 U.S. 1013, 79 S.Ct. 1151, 3 L.Ed.2d 1037; Gilmore and Black, The Law of Admiralty, New York: Foundation Press (1957); and Knauth, Ocean Bills of Lading, New York: American Maritime Cases, Inc., 4th ed. (1953).

For cases analyzing the law before COGSA, see Smith v. The Ferncliff, supra (and cases cited therein); The Merauke, 2 Cir. 1929, 31 F.2d 974; United States Shipping Bd. Emergency Fleet Corp. v. Florida Grain & Elevator Co., 5 Cir. 1927, 20 F.2d 583; Kilthau v. I. M. M. Co., 1927 A.M.C. 1131.

amount is exactly what the Master and district court in this case found the carrier's liability to be. To have held otherwise would have required the carrier to pay a price for damaged goods which was more than the worth of the goods in their undamaged state. The carrier is not and should not be the guarantor of the ups and downs of commodity prices.

■■ The appellants also contest the assessment of the cost of the Master's fee against them. Assessment of costs in admiralty, however, is discretionary with the district court. As we pointed out in Higgins, Inc. v. Hale, 5 Cir. 1958, 251 F.2d 91, 93:

> "On the merits, therefore, the case calls for an obvious affirmance. And so it does also to the Shipyard's hope that if not successful as it set forth on this voyage of little prospect, it might get all or a considerable part of the freight paid by assessing all of the costs against the vessel and owner. To do this, it (1) complains that, recovering as it did, something, the trial court erred in decreeing that each party should bear its own costs; and then (2) argues that since this was wrong, we shall right it and assess all the cost, here and below, against them.

> "This would indeed be an inconsiderable wagging of a prodigious dog. Moreover, it is beseeching us as an admiralty court to ignore what is so well established, that in the matter of costs, the court has the widest latitude to insure that an injustice is not done by an inexorable rule that costs follow the decree. Many of these circumstances, present here in abundance, are discussed in Benedict on Admiralty (6th Ed.), Vol. 3, §§ 435, 439, 440."

■ The district court found that the appellants had refused to consider anything other than the invoice value as the basis of recovery and by so doing had forced the submission of the case to the Master for the determination of the market value. We, therefore, find that the district court exercised its abundance of discretion in consonance with the conscience of equity.

Affirm.