**ASSOCIATED METALS AND MINER-ALS CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**M/V RUPERT DE LARRINAGA, her boilers, furnishings, tackle, etc., in rem Larrinaga Steamship Company, Ltd., a Foreign Corporation or other business entity, her owners, Defendants,**

**J. R. Shipping Corporation Limited, d/b/a Regent Line, a Foreign Corporation or other business entity, in personam, Defendant-Appellee.**

No. 78–1939

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1978.

Manuel Menendez, Jr., John B. Culp, Jr., Jacksonville, Fla., for plaintiff-appellant.

Toole, Taylor, Moseley & Milton, Robert E. Warren, Jacksonville, Fla., for defendant-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

PER CURIAM:

Plaintiff-shipper appeals the judgment for defendant-carrier in its suit for dam-

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

ages to a shipment of wire rods. Plaintiff asserts that the District Court's findings of fact and conclusions of law are clearly erroneous—without adequate evidentiary support and "partially induced by an erroneous view of the law." There is ample evidence in the record to support the lower court's factual findings and legal conclusions. We affirm.

Plaintiff shipped a cargo of "open hearth wire rods" from Antwerp, Belgium to Jacksonville, Florida, aboard a vessel chartered by defendant. Two months after defendant discharged the cargo in Jacksonville, plaintiff received a complaint from the company to which it had sold the goods. Plaintiff's marine surveyor examined the goods on the purchaser's premises and discovered substantial damage. Plaintiff filed this suit, alleging that the damage had occurred while the cargo was in the defendant's care and custody.

Because the bills of lading covering the goods in question incorporated the Carriage of Goods by Sea Act ("COGSA"), that law governs. 46 U.S.C. §§ 1300 *et seq.* Under COGSA, a shipper establishes a prima facie case of carrier liability for damages by proving that the carrier received the cargo in good condition and discharged it at the destination in a damaged state. 46 U.S.C. § 1303(3)(c), (4);[1] *United States v. Lykes Bros. Steamship Co.,* 5 Cir., 1975, 511 F.2d 218, 223; *Emmco Insurance Co. v. Wallenius Caribbean Line,* 5 Cir., 1974, 492 F.2d

508, 512. Plaintiff offered in evidence bills of lading for the cargo, giving rise to a presumption that, when delivered to defendant-carrier at Antwerp, the goods were in the order and condition described in the bills. 46 U.S.C. § 1303(4); *Emmco Insurance Co. v. Wallenius Caribbean Line,* 5 Cir., 1974, 492 F.2d 508, 513. However, proof that "the cargo was in a damaged condition when discharged . . . is essential to establish a case of prima facie liability," *Otis McAllister Export Corp. v. Grancolombiana (N.Y.) Inc.,* D. C., E.D.La., 1963, 216 F.Supp. 756, 757, and plaintiff failed to supply adequate proof in this case.

First, plaintiff did not, as provided by COGSA, give defendant notice of loss or damage within three days after defendant discharged the goods, thereby creating "prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading." 46 U.S.C. § 1303(6).[2] More importantly, plaintiff's proof at trial failed to counter this presumption of undamaged delivery. Plaintiff's case depended upon the testimony of its marine surveyor, who twice examined the shipment of wire rods. After his first inspection, conducted during discharge of the goods from the vessel, he filed a report recommending that "this entire shipment should be accepted with but a minor claim, if any, received"; he made no reference to any damage of a significant nature. Two months later, he inspected the cargo again, on the premises of the company that purchased the goods from plaintiff. In his second report, the surveyor described

---

1. 46 U.S.C. § 1303 provides in pertinent part:
   (3) After receiving the goods into his charge the carrier, or the master or agent of the carrier, shall, on demand of the shipper, issue to the shipper a bill of lading showing among other things—

   . . . . .

   (c) The apparent order and condition of the goods . . . .
   (4) Such a bill of lading shall be prima facie evidence of the receipt by the carrier of the goods as therein described in accordance with paragraph [ ] (3) . . . (c) of this section . . . .

2. 46 U.S.C. § 1303(6) provides that
   Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at

the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery.
   Said notice of loss or damage may be endorsed upon the receipt for the goods given by the person taking delivery thereof.
   The notice in writing need not be given if the state of the goods has at the time of their receipt been the subject of joint survey or inspection.
No joint survey or inspection took place in the instant case.

serious damage, resulting in his opinion from "extreme rough and/or careless handling at some time during the voyage of importation, while in the care and custody of the Steamship Company and may very well be the result of dragging and or pulling the bundles from the stow in the vessel during the course of discharge." Under cross-examination at trial, however, the inspector defined "voyage of importation" as "the travel of the coil from Europe to the premises of the consignee where our final examination was made." During the final portion of that "voyage," the cargo passed from shipper to stevedore to warehouseman to trucker to purchaser. Plaintiff's inspector conceded that he had no way of knowing at which stage, or in whose hands, the damage occurred and admitted that it could have occurred at some point from discharge onward. In addition, defendant's marine surveyor testified with regard to his own inspection of the cargo, conducted both on board the vessel and on the pier after discharge. He discovered no damage of the magnitude observed by plaintiff's inspector two months later and found no harm to the goods of any consequence.

Given the inadequacy of plaintiff's proof, the trial judge's findings were not clearly erroneous.

AFFIRMED.