EAC TIMBERLANE, etc., et al.,
Plaintiffs, Appellants,

v.

PISCES, LTD., et al., Defendants,
Appellees.

No. 83–1555.

United States Court of Appeals,
First Circuit.

Argued Feb. 7, 1984.

Decided Sept. 28, 1984.

George F. Chandler III, New York City, with whom Antonio M. Bird Jr., San Juan, P.R., Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, and Bird & Bird, San Juan, P.R., were on brief, for plaintiffs, appellants.

Jose Antonio Fuste, Hato Rey, P.R., with whom J. Ramon Rivera Morales, and Jimenez & Fuste, Hato Rey, P.R., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, WISDOM,* Senior Circuit Judge, and BREYER, Circuit Judge.

WISDOM, Senior Circuit Judge.

This action in admiralty raises the question of the applicability of the Limitation of Liability Act (Limitations Act), 46 U.S.C. §§ 181–189 (1982), of the Carriage of Goods by Sea Act (COGSA), *id.* §§ 1300–1315, and of principles of general maritime law in determining the liability of a vessel's owners, charterers, and operators for cargo lost when the vessel carrying the cargo exploded and sank on the high seas. The district court found that the shipowners,

---

* Of the Fifth Circuit, sitting by designation.

charterers, and operators had not contributed either by negligent act or by omission to the explosion that sank the vessel. The court therefore held that the defendants were not liable to the cargo owners for the loss. We agree with the district court that all defendants have shown freedom from fault in connection with the loss under any applicable rule of law. We affirm.

## I. FACTS

On January 25, 1978, the M/V Eva Maria sank with all cargo on board. The loss of the vessel and her cargo was caused by the explosion of a load of detonator caps in the number two 'tween deck of the ship Various cargo interests brought this action under COGSA and under general maritime law, seeking recovery from Pisces, Ltd. (Pisces), the vessel's owner; Transportation Maritima Mexicana, S.A. (TMM), the vessel's time charterer and the parent corporation of Pisces; Laeisz Maritime Trading Co., Ltd. (Laeisz), a contracting firm engaged by Pisces to manage and operate the vessel; and United Kingdom Mutual Steam Ship Owners Assurance Association (Bermuda) Ltd., defendants' insurer. Pisces and TMM then petitioned for exoneration from or limitation of liability under the Limitations Act. *Id.* §§ 181–189. These actions were consolidated and tried in the district court without a jury.

The trial judge found that the defendants had shown by a preponderance of the evidence that the loss was occasioned not by any actions or omissions of the defendants,[1] but by the spontaneous heating and combustion of the organic packing material surrounding the detonator caps. The district court rejected the plaintiffs' contention that the defendants should be held strictly liable for the loss as carriers transporting dangerous goods. The court instead analyzed the question of liability under COGSA, stating that "[t]he issues in these proceedings fall squarely upon determining whether defendant-petitioners' relationship to the cause of the explosion is one that, according to the standards of diligence imposed on carriers by COGSA, requires that they be found liable to the cargo interests". *EAC Timberlane v. Pisces, Ltd.*, 1983, D. Puerto Rico, 580 F.Supp. 99, 113.

In its thorough and well-reasoned opinion, the district court reviewed the several bases upon which the defendants claimed exoneration from liability. The court first examined the Fire Statute defense of the Limitations Act[2] and the COGSA fire exemption.[3] The court concluded that the defendants had proved that fire destroyed the cargo and that the fire was caused without their actual fault or privity and were, therefore, exonerated from liability under those statutes. *EAC Timberlane*, 580 F.Supp. at 117. The court then looked to COGSA's "catch-all" or "*q* clause" exemption, which exonerates a COGSA carrier and the ship from loss resulting from

"... [a]ny other cause arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier, but the burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage".

---

**1.** The plaintiffs alleged that the defendants had improperly stowed the detonator caps and other cargo in the number two 'tween deck, and that this improper stowage caused the explosion.

**2.** The Fire Statute, 46 U.S.C. § 182 (1982), provides:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

**3.** The COGSA fire exemption, 46 U.S.C. § 1304(2)(b) (1982) provides that "[n]either the carrier nor the ship shall be responsible for loss or damage arising or resulting from ... [f]ire, unless caused by the actual fault or privity of the carrier ...".

46 U.S.C. § 1304(2)(q) (1982). The district court found that the defendants had "demonstrated by a preponderance of the evidence that they provided a seaworthy vessel and that they were free from fault regarding the cause of the damage". The court concluded that "the defendant-petitioners carried their burden complying with the highest standards imposed by COGSA and the general admiralty law". *EAC Timberlane*, 580 F.Supp. at 118. The court, therefore, found it unnecessary to determine specifically whether defendants would also be exonerated under other statutory exemptions from liability or under general maritime law.

On appeal, the cargo interests contend that the district court's opinion is predicated upon the application of incorrect legal standards in that it exonerates all defendants from liability under the COGSA *q* clause exemption. The plaintiffs assert that COGSA is not applicable to all of the defendants,[4] and that the erroneous application of the *q* clause exemption to those defendants not within COGSA requires reversal as a matter of law. The plaintiffs also contend that the trial judge's finding that each defendant had proved freedom from fault in connection with the loss was clearly erroneous. We, however, agree with the district court's conclusion that the COGSA *q* clause contains the most stringent test for exoneration from liability for cargo loss and that a defendant who has met the burden established by the *q* clause necessarily has established freedom from fault under general maritime law as well. Further, we cannot say, upon a review of the entire record, that we are "left with the definite and firm conviction that a mistake has been committed". *United States v. U.S. Gypsum Co.*, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. Accordingly, we affirm the decision of the district court.

## II. APPLICABLE LAW

The parties agree that the liability of the various defendants is governed by the Limitations Act, by COGSA, or by general maritime law. The parties disagree, however, as to which theory of liability is applicable to which defendants, and as to the correct standard of liability under general maritime law. It is undisputed that TMM, as charterer of the vessel and issuer of the bill of lading for the lost cargo, is a COGSA carrier. Its liability therefore is properly determined under the applicable COGSA exemptions. It is also undisputed that the liability of Laeisz is properly determined under general maritime law.[5] The proper standard of liability as to Pisces, owner of the M/V Eva Maria, is, however, in dispute. Pisces contends that there is privity of contract between it and TMM, so as to place Pisces within the definition of a COGSA "carrier". The plaintiffs allege that Pisces is not a COGSA carrier and that its liability to the cargo interests must be assessed under the Limitations Act and under general maritime law. Plaintiffs further allege that under maritime tort theories Pisces and Laeisz should be held strictly liable for the loss.

**4.** Specifically, the plaintiffs allege that only TMM is a COGSA carrier entitled to avail itself of the *q* clause exemption. Appellants assert that the liability of Pisces and of Laeisz must be determined under principles of general maritime law.

**5.** The defenses and protections of COGSA may be extended to agents and contractors of the COGSA carrier by the inclusion of a "Himalaya Clause" in the bill of lading. *See Certain Underwriters at Lloyd's v. Barber Blue Sea Line*, 11 Cir.1982, 675 F.2d 266. Such a clause was included in the bill of lading issued to plaintiffs in the instant case. The contract for manning and operating the vessel was, however, between Laeisz and Pisces, the shipowner, and not between Laeisz and TMM, the charterer. The Himalaya Clause, therefore, extends the COGSA protections to Laeisz only if Pisces is a COGSA carrier bound by the Himalaya Clause.

The defendants do not urge on appeal, however, that Laeisz is protected by COGSA. They concede that the operator's liability is to be determined under general maritime law. Moreover, our analysis of the burdens of proof under COGSA and under general maritime law makes a determination of the applicability of COGSA to Laeisz unnecessary.

## A. COGSA

By its terms, COGSA applies "to all contracts for carriage of goods by sea to or from ports in the United States in foreign trade". 46 U.S.C. § 1312 (1982). The term "contract of carriage" includes only those "contracts of carriage covered by a bill of lading or any similar document of title, insofar as such document relates to the carriage of goods by sea, including any bill of lading or any similar document as aforesaid issued under or pursuant to a charter party from the moment at which such bill of lading or document of title regulates the relations between a carrier and a holder of the same." *Id.* § 1301(b). COGSA expressly does not apply to charter parties, except that bills of lading issued under charter party agreements must conform to the terms of COGSA. *Id.* § 1305; *see also Yeramex International v. S.S. Tendo,* 4 Cir.1979, 595 F.2d 943, 946. Thus, COGSA is applicable to a shipowner that has chartered its vessel to a COGSA carrier only when the shipowner has entered into a contract of carriage with the shipper or has some privity of contract with the shipper. *In re Intercontinental Properties Management, S.A.,* 4 Cir.1979, 604 F.2d 254, 258.

As noted by the Fourth Circuit, "[a] contract of carriage with an owner may either be direct between the parties, or by virtue of a charterer's authority to bind the owner by signing bills of lading 'for the master'." *Intercontinental Properties Management,* 604 F.2d at 258 n. 3. Generally, when a bill of lading is signed by the charterer or its agent "for the master" with the authority of the shipowner, this binds the shipowner and places the shipowner within the provisions of COGSA. *E.g., Gans S.S. Line v. Wilhelmsen (The Themis),* 2 Cir.1921, 275 F. 254, 262; *Tube Products of India v. S.S. Rio Grande,* 1971, S.D.N.Y., 334 F.Supp. 1039, 1041; *see generally* Bauer, *Responsibilities of Owner and Charterer to Third Parties—Consequences under Time and Voyage Charters,* 49 Tul.L.Rev. 995, 997–1001 (1975).

When, however, a bill of lading is signed by the charterer or its agent "for the master" but without the authority of the shipowner, the shipowner is not personally bound and does not by virtue of the charterer's signature become a COGSA carrier. *E.g., Associated Metals and Minerals Corp. v. S.S. Portoria,* 5 Cir.1973, 484 F.2d 460, 462; *Demsey & Associates, Inc. v. S.S. Sea Star,* 2 Cir.1972, 461 F.2d 1009, 1015.

In the instant case, the district court did not determine whether the bill of lading was signed by the charterer "for the master" with the authority of the shipowner so as to place the shipowner under the terms of COGSA. The plaintiffs contend that this was a fatal error that requires reversal of the district court's opinion as a matter of law. We cannot agree. It is, as was noted by the trial judge,[6] unnecessary to resolve the complex question whether COGSA was applicable to all of the defendants in the case before us. Because the trial court determined that each of the defendants proved, as required by COGSA's *q* clause, that they were free from fault in connection with the loss, the defendants were exonerated from liability whether their responsibility for the loss is properly ascertained under COGSA or under general maritime law.

The district court correctly analyzed the "ping-pong volley-like exchange of burdens" among claimants and defendants in determining liability for loss under COGSA. *EAC Timberlane,* 580 F.Supp. 113–15. The initial burden is on the shipper who wishes to recover against the carrier for damaged or lost cargo to put forth a prima facie case of cargo loss. This burden is met "by the presentation of a timely claim for damaged or lost cargo and a clean bill of lading which creates a rebuttable presumption that the cargo was delivered in good condition [citations omitted]". *Id.* at 113. The burden of persuasion then shifts to the carrier to exonerate itself from liability by proving that the loss falls within one of the statutory exemptions

---

6. *EAC Timberlane,* 580 F.Supp. at 118; *see also* page 718, *supra.*

from liability. *Id.* at 114. Any doubts as to the cause of the loss must be resolved against the carrier. *Id.* at 114–15.

■ The district court found that all of the defendants had met their burden of production and persuasion both under the fire exemption[7] and under the *q* clause exemption of COGSA. The *q* clause exemption exonerates the carrier from any liability for loss caused by "[a]ny other cause arising without the actual fault or neglect of the agents or the servants of the carrier ...", 46 U.S.C. § 1304(2)(q) (1983). This clause imposes the burden of persuasion on the defendant to show that it was not at fault in contributing to the loss or damage.[8] *Id.; see also* G. Gilmore & C. Black, The Law of Admiralty § 3–37 at 168 & n. 91 (2d ed. 1975) (*citing Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co. [The West Kyska]*, 5 Cir.1946, 155 F.2d 687, *cert. denied*, 1946, 329 U.S. 761, 67 S.Ct. 115, 91 L.Ed. 656). Once the defendants in the instant case made this showing, the burden shifted to the cargo interests to "produce evidence to discredit the carrier's theory of causation or to present proof of an alternative and more probable explanation for the loss that would involve the carrier's causative or

contributory negligence". *EAC Timberlane*, 580 F.Supp. at 118. This the plaintiffs failed to do.

The district court found the defendants' showing of freedom from fault under the *q* clause and the plaintiffs' failure to rebut this showing to be determinative of the outcome of the case. The court's decision did not rest upon an erroneous application of COGSA to all defendants. It rested instead upon a determination that the *q* clause imposed on the defendants the most demanding burden under maritime law, and that the defendants met this burden. Under the Limitations Act and general maritime law, the plaintiffs would have had the burden of proving that the defendants' negligence caused the loss; only then would the burden of persuasion shift to the defendants to rebut the plaintiffs' evidence. The plaintiffs did not prove that the defendants' negligence caused the loss. Moreover, in accordance with the requirements of the *q* clause, the defendants affirmatively proved that no fault or negligence on their part caused or contributed to the loss. This showing exonerates the defendants from liability under COGSA, under the Limitations Act, and under general maritime law. *See id.* at 118.[9]

---

**7.** The district court found that each of the defendants was exonerated from liability under the fire exemption because each proved that the loss in question was caused by a fire and explosion which occurred without any fault of their own. *EAC Timberlane*, 580 F.Supp. at 116. Because the defendants thereby met their burden of proof under COGSA's *q* clause, the district court correctly deferred a decision on the precise burden of proof that must be met under the COGSA fire exemption. Other circuits have split on this issue. *Compare Complaint of Ta Chi Nav. (Panama) Corp., S.A.*, 2 Cir.1982, 677 F.2d 225, 229 (carrier meets burden by showing damage caused by fire; burden then shifts to shipper to show carrier's negligence caused or contributed to fire) *with Sunkist Growers Inc., v. Adelaide Shipping Lines*, 9 Cir.1979, 603 F.2d 1327–46 (carrier must show that fire caused loss and that carrier exercised due diligence to make vessel seaworthy before burden shifts to shipper). *See EAC Timberlane*, 580 F.Supp. at 115.

The district court's holding that the defendants also meet the stricter burden of proof required by the q clause exemption—i.e., freedom from any fault in connection with the loss—

makes further analysis of the fire exemption unnecessary. As noted by Gilmore and Black, "[t]he presence of [the q clause] ought to have some tendency to make it unnecessary to define some of the other exceptions with precision. All we need to know, e.g., as to the defining characteristics of 'Act of God' [here, fire] is that freedom from fault is one of them, for once a carrier has established freedom from fault, it does not make any difference whether the cause of damage is an 'Act of God' [, or fire,] or 'any other cause' [the q clause exception]." G. Gilmore & C. Black, The Law of Admiralty § 3–37 at 168 (2d ed. 1975).

**8.** For the full text of the *q* clause exemption, see *supra* p. 717.

**9.** The court stated:

Assuming that the high standard required of the common carriers by this exemption is the one applicable to the facts of this case, the evidence submitted by defendant-petitioners, when compared to that presented by cargo plaintiffs, leads us to conclude that this burden was convincingly met by defendant-peti-

## B. *Limitation of Liability Act*

█ A shipowner is entitled to petition the court to limit his liability for cargo lost or damaged without the privity or knowledge of the shipowner to the value of the vessel and her freight then pending. 46 U.S.C. § 183(a) (1983). In a limitation proceeding, the court must first determine whether there exists any liability. *The Rambler,* 2 Cir.1923, 290 F. 791, 792. *The 84-H,* 2 Cir.1923, 296 F. 427, *cert. denied,* 1923, 264 U.S. 596, 44 S.Ct. 454, 68 L.Ed. 867. Liability is determined by the same legal principles that apply in an ordinary action for damages, except that certain statutory exemptions from liability apply. *See generally* G. Gilmore and C. Black, The Law of Admiralty §§ 10-5 through 10-14 at 834-46 (2d ed. 1975). A claimant seeking recovery for loss of cargo therefore must prove a "definite tort or contract, and the [shipowner's] connection with it". *Southern Pacific Co. v. United States,* 2 Cir.1934, 72 F.2d 212, 215.

In the instant case, the cargo claimants established a prima facie case of cargo loss. The district court found, however, that the plaintiffs did not prove that the defendants had caused or contributed to the explosion and fire which sank the Eva Maria. *EAC Timberlane,* 580 F.Supp. 118-121. The defendants affirmatively established their freedom from fault; they are free from liability, unless they are to be held strictly liable for the loss.

## C. *General Maritime Law*

█ The parties agree that principles of general maritime law govern the determination of liability of those defendants who are not regulated by COGSA. The parties disagree, however, as to the correct standard of liability under general maritime law. The plaintiffs contend that the defendants, as carriers of ultrahazardous materials,[10] were strictly liable for the loss of cargo. They argue that § 519 of The Restatement (Second) of Torts (1977),[11] which has been imposed to hold land carriers strictly liable for the miscarriage of hazardous goods,[12] is applicable to carriers of goods by sea as well. This proposition is not supported by the case law and was properly rejected by the district court.

As was noted by the district court, the need for uniformity in admiralty law is well recognized. *EAC Timberlane,* 580 F.Supp. 112. The imposition of a rule of strict

---

tioners. There is no need to determine if the other less imposing burdens of the Limitations Act, the fire exemption or other "effect" exemptions, apply to the facts of this case. *EAC Timberlane,* 580 F.Supp. at 118.

**10.** It is undisputed that the detonator caps that ignited causing the explosion and fire aboard the M/V Eva Maria were hazardous materials.

**11.** Section 519 provides:
(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.
The Restatement of Law (2d) of Torts, § 519 (1977).

**12.** The plaintiffs cite the case of *Chavez v. Southern Pacific Transportation Co.,* 1976, E.D. Ca., 413 F.Supp. 1203, which held a railroad strictly liable for personal injuries and property damage caused by the explosion of a cargo of bombs stored in the railroad yard. The *Chavez*

court found that California had adopted the rule that one engaged in ultrahazardous activity shall be held strictly liable for damages resulting from such activity. *Id.* at 1205. The court also determined that California had not carved out an exception to this rule for common carriers engaged in a public duty. *Id.* at 1213-14. Such an exception has, however, been recognized in other states. *See, e.g., Actiesselskabet Ingrid v. Central Ry. Co.,* 2 Cir.1914, 216 F. 72, 78, (rejecting the principle that "a common carrier ... under legal obligation to transport dynamite ... is an insurer against any damage which may result in the course of transportation, even though it has been guilty of no negligence which occasioned the explosion which caused the injury"). *See also* § 521 of the American Law Institute's Restatement (2d) of Torts (1977) ("rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier"). Such an exception may exempt the defendants, as common carriers, from liability in the instant case, even if § 519 were applicable in admiralty.

liability for the carriage of ultrahazardous materials, which varies from state to state, would destroy this uniformity and intrude upon the "established statutory scheme concerning carriage of goods by sea" adopted by Congress. *Id.* Adoption of this rule would, therefore, be inconsistent with established principles of general maritime law.[13] We therefore affirm the district court's holding that principles of strict liability are not applicable to the case before us; the defendants would be liable in tort for the loss of cargo only upon proof that their negligence caused the loss. Accordingly, the district court's finding that the defendants affirmatively proved freedom from any fault in connection with the loss and that the plaintiffs failed to rebut this proof is sufficient to exonerate each of the defendants from liability under general maritime law.

## III. FINDINGS OF FACT

■ A district court sitting without a jury is required to set forth with specificity its findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). Rule 52(a) further prescribes that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses". *Id.* This standard of appellate review is applicable to the review of a trial court sitting without a jury in admiralty. *McAllister v. United States*, 1954, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20. The "clearly erroneous" standard of Rule 52(a) does not, however, apply to conclusions of law. *Pullman Standard, Inc. v. Swint*, 1982, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66; *U.S. v. The Singer Manufacturing Co.*, 1963, 374 U.S.

174, 83 S.Ct. 1773, 10 L.Ed.2d 823. When a trial court's conclusion is "derived from the court's application of an improper standard to the facts, it may be corrected as a matter of law". *Singer*, 374 U.S. at 194, 83 S.Ct. at 1784. It is evident from our analysis of the law applicable to the instant case that the district court has applied the proper legal standards to the facts of this case. Our review is, therefore, limited by the clearly erroneous standard of rule 52(a).

■ A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed". *United States v. U.S. Gypsum Co.*, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. A court of appeals accords great weight to a district court's findings of fact and determination of the credibility of witnesses. *Inwood Laboratories v. Ives Laboratories*, 1982, 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606; *Custom Paper Products Co. v. Atlantic Paper Box Co.*, 1 Cir.1972, 469 F.2d 178, 179.

In the instant case, the trial judge found that the defendants' theory of spontaneous heating and explosion of the rice hull material in which the detonator caps were packed to be the most persuasive and likely explanation for the loss of the ship and its cargo. *EAC Timberlane*, 580 F.Supp. at 119–21. Although the court noted that, like plaintiffs' theory of causation, the defendants' theory rested in part on inference and conjecture, the defendants' theory had a stronger factual basis. *Id.* at 119. The trial court was in the best position to weigh the evidence before it[14] and to judge the

---

**13.** The plaintiffs cite several cases for the proposition that the doctrine of strict liability has been incorporated into admiralty law. The cases cited, however, recognize only that the doctrine of strict *products* liability has been uniformly adopted by all of the states and should, therefore, be incorporated into admiralty law. *See, e.g., Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co.*, 9 Cir.1977, 565 F.2d 1129, 1134 ("strict products liability actions have become sufficiently well-estab-

lished to justify its being incorporated into the law of admiralty"). No such uniformity exists with respect to the doctrine of strict liability for the miscarriage of hazardous materials. *See supra* note 12.

**14.** The plaintiffs' contention that the district court's decision is based on incompetent evidence is without merit. "[T]he decision whether to admit or exclude evidence of experiments in a particular case rests largely in the discretion of the trial judge and [her] decision will not

credibility of the witnesses. The court's conclusion as to the inferences to be drawn from this evidence are reasonably supported by the record, and should not be disturbed on appeal. This is not a case in which the proofs are left in equipose. The trial court found that the defendants had demonstrated by a preponderance of the evidence that the explosion and loss were caused by spontaneous heating and combustion and not by improper stowage or any other fault of their own. These findings were not clearly erroneous. Accordingly, we affirm.

## IV. CONCLUSION

The district court's finding exonerating the defendants from liability for the loss of cargo aboard the M/V Eva Maria was not predicated upon the erroneous application of the law to the facts before it. The trial judge correctly concluded that the defendants had established their freedom from fault under COGSA's $q$ clause and that this showing was sufficient to exonerate them from liability under general maritime law as well.

The court's findings of fact were reasonably drawn from competent evidence and were not clearly erroneous. The record indicates that the trial court correctly assessed the credibility of the witnesses and the testimony before it. The courts finding that the defendants convincingly proved freedom from fault is reasonably drawn from the record.

The judgment of the district court is AFFIRMED.

be overturned on appeal absent a clear showing of an abuse of discretion ...". *Ramseyer v. General Motors Corp.*, 8 Cir.1969, 417 F.2d 859, 864. There is no indication that such an abuse of discretion occurred in the instant case.