**CIGNA INSURANCE COMPANY OF PUERTO RICO, Plaintiff,**

v.

**The M/V SKANDERBORG, et al., Defendants.**

**Civ. No. 94–2678(PG).**

D. Puerto Rico.

Sept. 27, 1995.

Francisco J. Colón Pagán, San Juan, P.R., for Plaintiff.

Luis N. Saldana Román & Carlos E. Bayrón, San Juan, P.R., for Defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This dispute arises from the shipment of 1,575 cartons containing nearly 19,000 one-half gallon tins of olive oil from Cádiz, Spain, to San Juan, Puerto Rico. Upon delivery, much of the shipment was found to be ruined by rust. For this damage, the Cigna Insurance Company of Puerto Rico paid $21,414.15 to its insured, the A. Cordero Badillo company, the Puerto Rican importer of the olive oil. Cigna now appears as plaintiff, subrogated to all the rights and claims of Cordero Badillo.

The olive oil was shipped to Puerto Rico aboard the M/V Skanderborg, a vessel owned and operated by the Nordana Lines AS. The unventilated container in which the olive oil was shipped was provided by Nordana to Aceites Carbonell, S.A., the Spanish shipper. Aceites Carbonell stuffed, sealed, and returned the container to Nordana. Nordana transported it to Puerto Rico. Upon opening the container, Cordero Badillo discovered a portion of the cargo damaged by rust. Plaintiff contends that the tins rusted because they were stored in an unventilated container.

Plaintiff has brought suit against the M/V Skanderborg, Nordana AS, Aceites Carbonell, and several unidentified insurance companies for alleged violations of the Carriage of Goods at Sea Act (COGSA), codified at 46 App.U.S.C. 1300, et seq.[1] (Though named in the complaint, it does not appear that any action has actually commenced against Aceites Carbonell.) COGSA establishes the minimum duties and rights of maritime carriers and shippers of cargo. 46 App.U.S.C.

---

1. The complaint also alleges violations of Puerto Rico law, though none of the subsequent pleadings address the issue. As a result, I will also abstain from addressing any potential application of Puerto Rico law.

§§ 1302–04. The complaint is properly before this Court pursuant to admiralty and federal question jurisdiction, 28 U.S.C. § 1331, 1333, and 46 App.U.S.C. § 1300. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Both Nordana and Cigna have filed motions for summary judgment.

### PARTIES' LEGAL ARGUMENTS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Cigna makes two principle arguments. First, that it has met the *prima facie* requirements of 46 App.U.S.C. § 1303(4), without defendant proffering sufficient rebuttal, thus entitling it to judgment as a matter of law. Second, plaintiff contends that Nordana breached its duty of care by providing an unfit container for shipping the tins of olive oil. Cigna asserts that the cargo rusted because the container was unventilated, that defendants knew, or should have known, of the harm that an unventilated container could cause to the tins of olive oil, and that defendants failed to take the reasonable precaution of providing a ventilated container.

On its behalf, Nordana asserts the following: (1) that Plaintiff has not established a *prima facie* case under COGSA, (2) even if plaintiff has made out a *prima facie* case, damage resulted from one of the "excepted causes" listed in § 1304(2), thus alleviating Nordana of liability, and (3) that it had no duty to provide a "fit" container to the shipper, and that even if it did, the shipper contractually assumed this duty.

### ANALYSIS AND CONCLUSIONS OF LAW

A *prima facie* case for recovery under COGSA is established by showing that the ocean carrier accepted goods described in a negotiable bill of lading as being in apparent good order and condition and subsequently failed to deliver them or delivered them in damaged condition. *EAC Timberlane v. Pisces, Ltd.,* 745 F.2d 715, 719 (1st Cir.1984). Once a *prima facie* case has been established the burden of proof shifts to the carrier to show that the damage was not due to its negligence, or that the damage resulted from one of the "excepted causes" listed in § 1304(2). *Id.* at 719–20.

As a starting point, it is not clear that plaintiff has established a *prima facie* case. It is true that Nordana issued a bill of lading indicating that it had loaded aboard the M/V Skanderborg one package "said to contain 1575 cartons of olive oil." But because the container was stuffed and sealed by Aceites Carbonell, Nordana never had the opportunity to inspect the cargo. Noting that the burden is on the shipper to establish the *prima facie* case, several courts have excused the carrier from liability when it never had the opportunity to inspect the cargo, and damage was not clearly caused by an unfit vessel. As Judge Friendly once observed:

> Although a clean bill of lading normally constitutes *prima facie* evidence that the cargo was in good condition a the time of shipment, courts have long recognized that it does not have this probative force where, as here, the shipper seeks to recover damages to goods shipped in packages that would have prevented the carrier from observing the damaged condition had it existed when the goods were loaded.

*Caemint Food, Inc. v. Brasileiro,* 647 F.2d 347, 352 (2d Cir.1981). *See also Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 934 (1st Cir.1987) (citing *Caemint Food* ).

Further, as Cigna itself concedes, the damage resulted from an excepted cause: "insufficiency of packing." 46 App.U.S.C. § 1304(2)(n). Although Cigna does not squarely address the "excepted cause" aspect of Nordana's defense, it appears to argue that § 1304(2)(n) should not apply because Nordana provided the container. Why this should matter, however, is not entirely clear. Plaintiff *appears* to argue the following: Carriers have a duty to provide a seaworthy vessel. 46 App.U.S.C. § 1301(1)(a). From this uncontestable rule of law plaintiff asserts that, because courts have held that a container is "functionally part of the ship," *Leather's*

*Best, Inc. v. S.S. Mormaclynx,* 451 F.2d 800 (2d Cir.1971), it follows that the carrier's duty to provide a seaworthy ship extends to ensuring that the container it provides is fit for its intended use.

However, *Leather's Best* and the other cited cases are inapplicable. These cases hold that a container is "functionally part of the ship" only for the purposes of 46 App.U.S.C. § 1304(5). This provision limits the carrier's liability per "package." The courts have held that the huge containers used by the modern shipping industry are not "packages" for the purposes of COGSA's limit on liability, but are better viewed as part of the vessel itself. *Leather's Best,* 451 F.2d at 814–15. Thus, these cases do not support the assertion that carriers have an absolute duty to provide seaworthy containers.

■ Other provisions of COGSA support this conclusion. COGSA imposes the following minimum duties on carriers: "The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 App.U.S.C. § 1303. COGSA imposes no duty on carriers to assure the adequacy of containers it provides to shippers.

■ Standing alone, of course, § 1303 is dispositive of nothing. Plaintiff could still charge Nordana with failing to exercise due care in providing an unventilated container. The cases, however, do not support imposing such a duty on carriers. For example, the shipper is required to advise the carrier of any special requirements of the cargo. *Tenneco Resins, Inc. v. Davy International AG,* 881 F.2d 211, 213 (5th Cir.1989). Further, absent *apparent* inadequate packaging or special instructions by the shipper, the carrier has no duty to inspect the cargo for adequacy of packaging.

■ Most damaging to Cigna's claim, however, is the fact that Nordana and Cordero Badillo contractually agreed to limit Nordana's liability for damage arising to containers packed by the shipper. The bill of lading accomplishes this in clause No. 6:

SHIPPER PACKED CONTAINERS:

if a container has not been stuffed by or on behalf of the Carrier:

(a) the carrier shall not be liable for loss of or damage to the goods caused by

  i. The manner in which the container has been stowed; or

  ii. the unsuitability of the Goods for Carriage in Containers; or

  iii. The unsuitability or defective condition of the Container provided that the defects would have been apparent upon reasonable inspection by the Merchant at or prior to the time when the Container was stuffed. Acceptance and use of a container by Shipper shall be *prima facie* evidence of suitability.

COGSA limits the ability of a carrier to contractually limit liability, 46 App.U.S.C. § 1303(8). However, this limitation does not extend to areas in which no preexisting duty is imposed by COGSA. Here, although Cigna may have been able to demonstrate some common law negligence, COGSA imposes no duty on carriers regarding their packaging arrangements with shippers. Therefore, the liability limitation provision of clause No. 6 of the bill of lading is valid under COGSA.[2]

Therefore, defendant's motion for summary judgement (**Dkt. # 6**) is **GRANTED.** Plaintiff's counter-motion for summary judgment (**Dkt. # 7**) is **DENIED.**

**IT IS SO ORDERED.**

---

**2.** The First Circuit has held that a bill of lading is a contract of adhesion and therefore subject to close scrutiny. *Vimar Seguros Y Reaseguros v.* *M/V Sky Reefer,* 29 F.3d 727, 731 n. 4 (1st Cir. 1994). However, this issue has not been raised by the parties.